UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-CV-23616-SCOLA/TORRES

VERBENA PRODUCTS LLC d/b/a
BEAUTYVICE, a Florida limited liability
company,

  Plaintiff,

v.

PIERRE FABRE DERMO-COSMETIQUE
USA, INC., a Delaware corporation;
PIERRE FABRE DERMO-COSMETIQUE,
S.A., a foreign limited company; and
YELLOW BRAND PROTECTION, INC.,
a Delaware corporation,

  Defendants.
_____/

**RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

  Plaintiff Verbena Products LLC d/b/a Beautyvice ("Beautyvice"), by undersigned counsel and pursuant to S.D. Fla. L.R. 7.1, hereby submits this Response in Opposition to Defendants Pierre Fabre Dermo-Cosmetique USA, Inc.'s, Pierre Fabre Dermo-Cosmetique, S.A.'s (collectively, "Pierre Fabre"), and Yellow Brand Protection, Inc.'s ("Yellow Brand") (Pierre Fabre and Yellow Brand are collectively referred to herein as the "Defendants") Motion to Dismiss Plaintiff's Amended Complaint ("Defendants' Motion") (ECF No. 36), and in support thereof respectfully refers the Court to the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I. INTRODUCTION**

  By contending that there is no adversarial interest between Yellow Brand and Plaintiff, *see* Def.'s Mot. at pp. 5-7, Defendants' Motion fails to acknowledge the alleged agency relationship between Pierre Fabre and Yellow Brand. As Pierre Fabre's agent—and as shown herein—Yellow Brand is liable for the misrepresentations it made to third party eBay. Thus, there is now a

substantial controversy between Yellow Brand and Plaintiff as a result of the adversarial interests created by these misrepresentations. Further, the damages caused by the unwarranted removal of Plaintiff's eBay product listings (the "Accused Listings")—which was directly caused by Yellow Brand's misrepresentations—are sufficiently real and immediate to warrant the issuance of a declaratory judgment.

Defendants' Motion also contends that Plaintiff failed to state a valid claim under the Lanham Act and state law for false advertising, unfair competition, and deceptive trade practices. Def.'s Mot. at pp. 8-10. In spite of express allegations to the contrary, Defendants specifically argue that the takedown notice does not qualify as commercial speech, was not sufficiently disseminated to the relevant purchasing public, and was not designed to influence Plaintiff's customers. *Id.* Contrary to Defendants' foregoing contentions, the Amended Complaint adequately pleads facts supporting the existence of commercial advertising and promotion. Indeed, these same arguments were recently presented to this Court in the similar action styled, *Verbena Products, LLC v. Sesderma USA LLC, et al.*, Case No. 1:19-cv-23778-Altonaga (the "Sesderma Action"). In the Sesderma Action, the defendants also argued that a takedown notice to third party Walmart did not constitute commercial advertising and promotion. Sesderma Action, Def.'s Mot. to Dismiss Am. Compl. (ECF No. 20) at pp. 5-9. In response, Plaintiff presented the same arguments and authority as set forth herein. *Id.*, Pl.'s Resp. in Opposition (ECF No. 23) at pp. 5-16. Following oral argument, this Court denied Sesderma's Motion and ordered that the defendants in that case answer Plaintiff's pleading. *Id.*, Or. (ECF No. 28).[1]

Defendants' Motion also incorrectly relies on the *Noerr-Pennington* doctrine. Def.'s Mot. at pp. 11-13. As shown herein, the well-pled allegations of the Amended Complaint adequately support that Defendants' takedown notice to eBay was "objectively baseless" and designed with the intent to injure Plaintiff's sales and reputation on the eBay marketplace. As set forth by Defendants' own authority, these allegations sufficiently overcome application of the *Noerr-Pennington* doctrine.

Defendants' Motion further contends that Plaintiff has failed to state a cause of action for tortious interference. Def.'s Mot. at pp. 13-14. First, Defendants' contention that Plaintiff's

---

[1] During oral argument, Judge Altonaga held that the Amended Complaint in the Sesderma Action—which is almost *verbatim* the same pleading that is at issue in this action—sufficiently pled the elements required for a cause of action under the Lanham Act.

tortious interference claim must "precisely" identify customers has been recently rejected by the Eleventh Circuit Court of Appeals. Second, Defendants' reliance on cases where tortious interference claims are rejected based on "good-faith" efforts to enforce intellectual property rights is entirely misplaced. As set forth by the Amended Complaint, Defendants' targeted the Accused Listings in a bad faith attempt to gain more market share.

Lastly, Defendant Yellow Brand argues that this Court lacks personal jurisdiction over it. Def.'s Mot. at pp. 15-18. As shown herein, this Court may exercise both general and specific jurisdiction over Yellow Brand in compliance with accepted notions of due process.

## II. ARGUMENT

### A. Motion to Dismiss Standard

In ruling on a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (internal citations omitted), and "must accept all reasonable inferences therefrom." *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 n.12 (11th Cir. 2005), *abrogated on other grounds*, (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Further, the Court must construe the complaint in the light most favorable to the plaintiff. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (internal citations and quotations omitted); *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The threshold is 'exceedingly low' for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).

### B. Plaintiff Has Sufficiently Stated a Claim for Declaratory Relief Against Defendant Yellow Brand.

It is axiomatic under Florida law that, when "false representations [are] made by an agent in the course of his employment both the agent and his principal are civilly liable." *Bobby Jones*

*Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 178 (5th Cir. 1968) (citing *Wheeler v. Baars*, 33 Fla. 696, 713, 15 So. 584, 589 (Fla. 1894)).[2] "There is nothing unusual about this doctrine, for it apparently is the general rule across the United States." *Suleski*, 391 at n. 19 (quoting 3 C.J.S. Agency 221(b), at 132 ("Even though an agent is duly authorized and his principal disclosed, if he is guilty of a fraudulent act or misrepresentation, he is liable therefore…."); Restatement (Second) of Agency 347 (1958) ("An agent who fraudulently makes representations … is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction of behalf of the principal.")).

Here, Plaintiff's Amended Complaint repeatedly alleges that Yellow Brand, as Pierre Fabre's agent, made false representations to eBay relating to the genuine character of the Accused Listings. Am. Compl. at ¶¶ 39, 50, 64, 79, 93 & 96. The fact that these misrepresentations did not involve trademarks owned by Yellow Brand is inconsequential because 1) the misrepresentations relate to the products sold under Plaintiff's Accused Listings, and not to the ownership of any marks identified by those products; and 2) the effect of the misrepresentations resulted in a direct injury to Plaintiff. Thus, in accordance with the foregoing authority, because Yellow Brand is liable for these representations, these representations have created an adverse interest between Yellow Brand and Plaintiff supporting an award of declaratory relief. Moreover, the Amended Complaint sets forth in detail how Yellow Brand's misrepresentations relating to Plaintiff's Accused Listing led to the removal of the Accused Listings and irreparable damage to Plaintiff's reputation on the eBay marketplace. *Id*. at ¶¶ 29, 34, 42, 43, 44, 49. These allegations sufficiently demonstrate that the injury to Plaintiff was "real and immediate." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).

      C.     **Plaintiff Has Sufficiently Stated a Claim for False Advertising, Unfair Competition, and Deceptive Trade Practices.**

Plaintiff sufficiently pled that Defendants violated the Lanham Act by disseminating false or misleading injurious statements about Plaintiff's business and products. The Lanham Act serves to "protect persons engaged in commerce . . . against unfair competition" and "injuries to business reputation and present and future sales." *Lexmark Int'l, Inc. v. Static Control*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Components, Inc.*, 134 S. Ct. 1377, 1389–90 (2014) (citation and internal alterations omitted). A plaintiff alleging a claim of false advertising in violation of Section 43(a) the Lanham Act must adequately plead, and ultimately prove, that:

> (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising.

*Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Here, Plaintiff has alleged all the foregoing requisite elements for a claim under Section 43(a) of the Lanham Act: (1) the Amended Complaint alleges that Defendants' representations to eBay that Plaintiff's products were counterfeit and were false and misleading, Pl.'s Am. Compl. at ¶¶ 28, 29, 31 & 60; (2) the Amended Complaint alleges that these false representations deceived consumers as to Plaintiff's reputation in the market, *id.* at ¶¶ 64, 67, 81 & 87; (3) the Amended Complaint alleges that Plaintiff's "false and misleading representations had a material effect on Plaintiff's customers' and prospective customers' decisions to do business with Plaintiff," *id.* at ¶ 68; (4) the Amended Complaint alleges that Plaintiff's Accused Listings were re-sold in the United States on the eBay online marketplace, and that the representations affected interstate commerce, *id.* at ¶¶ 25 & 69; and (5) the Amended Complaint alleges that Plaintiff has been injured as a result of Defendants' false and misleading representations, *id.* at ¶¶ 47, 75, 83 & 89.

Notwithstanding Plaintiff's foregoing identification of all the necessary elements to state a cause of action under Section 43(a) of the Lanham Act, Defendants maintain that Plaintiff's takedown notice to eBay fails to qualify as a false statement occurring in commercial advertising or promotion. Pursuant to Section 43(a) of the Lanham Act, redress is available for false or misleading statements that "occur in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Courts have determined that a statement "occurs in commercial advertising or promotion" if it is:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

5

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (citing *Gordon & Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521 (S.D.N.Y.1994)). As shown herein, Defendants' false and misleading statements regarding the purportedly counterfeit nature of Plaintiff's products qualify as a statement occurring in "commercial or advertising promotion" under the foregoing test.

> 1. **Defendants' statements qualify as commercial speech.**

"The Supreme Court has … indicated that it would regard as commercial speech any expression related solely to the economic interests of the speaker and its audience." *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1280 (S.D. Fla. 2008); *Central Hudson Gas and Electric Corporation v. Public Service Commission of New York,* 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980);[3] *see also Taslidzic v. Luther*, Case No. 9:18-cv-80038, 2018 WL 3134419, at *3 (S.D. Fla. May 21, 2018) ("Commercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests.") (quoting *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1204, n. 22 (11th Cir. 1985)).

Here, the Amended Complaint expressly alleges that Defendants' takedown notice and statements to eBay were "designed to advance their business interests by removing Plaintiff's listings from the eBay marketplace thereby increasing Defendants' market share of customers interested in purchasing Defendants' product." Am. Compl. at ¶ 65. The Amended Complaint further alleges as follows:

> Defendants acted with the intent that the Accused Listing be removed from the eBay marketplace prohibiting consumers from purchasing Plaintiff's products in an effort to gain more market shares by forcing consumers to purchase the Rene Furterer branded products directly from Defendants. By eliminating the secondary market created by Plaintiff, Defendants obtained an economic advantage by direct

---

[3] Defendants' reliance on *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-68, 103 S.Ct. 2875, 2880-81 (1983) is inaccurate and misplaced. Def.'s Mot. at pp. 8-9. In *Bolger*, the Supreme Court did not hold that "commercial speech" *required* a combination of the factors identified in Defendant's Motion. Rather, the Court held that in the circumstances before it, economic motivation alone would be insufficient to turn the pamphlets at issue into commercial speech. *Id*. Here, however, Defendants submitted the takedown notice not only for economic gain, but also to increase the visibility of its products over that of its competitor which is the purpose of commercial advertising.

sales that would have otherwise gone to the secondary market to their "authorized" channels of distribution.

*Id.* at ¶ 70. The allegations of the Amended Complaint do not set forth any other possible basis or motive for Defendants' statements other than Defendants' economic interests, and thus, qualify as "commercial speech" under the Supreme Court's and this Court's previously articulated definitions of the term.

Moreover, this Court has similarly and repeatedly held that statements made against competitors "[i]n an effort to gain more market share" are sufficient to satisfy the Lanham Act's commercial speech requirements at the motion to dismiss stage. For example, in *Advisors Excel, LLC v. Scranton,* Case No. 14-cv-60558, 2014 WL 12543802, *4-5 (S.D. Fla. Sept. 16, 2014) (J. Middlebrooks), the complaint alleged that defendants made disparaging statements against the plaintiff but did not allege that defendants promoted their own competing services. Nevertheless, this Court found it "easy to conclude that [the Defendant's] statements were **designed to advance [Defendant's] business interests** through influencing customers to buy [Defendant's] services, rather than Plaintiff's." *Id.* at *6 (emphasis added). Likewise, in *Taslidzic* this Court held that the plaintiff satisfied the threshold pleading requirements to defeat a motion to dismiss by pleading "that the disparaging statements Defendant Luther is alleged to have made against Plaintiffs were intended to increase Prime Tech's profits, and thus it adequately alleges the commercial speech requirement of the Lanham Act." *Taslidzic*, 2018 WL 3134419 at *4.

In sum, if Defendants had any evidence or proof to support a claim of infringement against Plaintiff the appropriate course of action would have been to notify Plaintiff of its alleged conduct through a cease and desist letter or filed action for infringement. Because, however, Defendants **had no evidence whatsoever to support any such claims of infringement**, Defendants resorted to making false and misleading statements about Defendant's products in a calculated effort to have Plaintiff's competing products removed and gain an unfair competitive advantage in the marketplace. The Lanham Act was created to prevent and provide redress for such conduct.

2. **Defendants are in commercial competition with Plaintiff.**

The Amended Complaint alleges that Plaintiff and Defendants compete in the beauty and skin care products industry. Am. Compl. at ¶ 61. With respect to Defendant Yellow Brand, Yellow Brand was undisputedly acting as an agent of Pierre Fabre when it made

7

misrepresentations relating to Plaintiff's Accused Listings. As set forth above, these misrepresentations subject Yellow Brand to the same liability as its principal. *Suleski*, 391 F.2d 172, 178. Therefore, the Amended Complaint complies with the second factor for demonstrating statements occurring in commercial advertising or promotion.

### 3. Defendants' false advertisements were made for the purpose of influencing consumers' purchasing decisions.

Plaintiff sufficiently alleged that Defendants' false and misleading representations were made to deceive eBay and are likely to deceive and confuse the public (*i.e.*, eBay's marketplace users) into believing that Plaintiff's products are counterfeit, thereby materially effecting their decision and ability to purchase Plaintiff's products. Am. Compl. at ¶ 64.

Courts have held that representations identical or substantially similar to that of Defendants' constitute commercial advertising or promotion made for the purpose of influencing consumers to utilize Defendants' services. For example, in *Millenium Laboratories* the counter-plaintiff, in an effort to increase its market share in the drug testing industry, falsely advertised to counter-defendant's customers that its "business practices violate the law and that those customers should not continue to do business with [counter] defendant." *Millenium Lab's, Inc. v Universal Oral Fluid Lab's,* Case No. 8:11-cv-1757, 2012 WL 12906334, at *1 (M.D. Fla. Aug. 2, 2012).

Further, the counter-plaintiff told the counter-defendant's "actual and potential customers that they are or would be violating the law by doing business with [counter-defendant]." *Id*. This Court's sister court denied counter-defendant's motion to dismiss finding the alleged facts, taken as true, constituted commercial advertising for the purpose of influencing consumers to use counter-plaintiff's goods or services over those of the counter-defendant. *Id*. at *5-6; *see also VG Innovations, Inc. v. Minsurg Corp.*, 2011 WL 1466181, at * 5-6 (M.D. Fla. Apr. 18, 2011) (denying motion to dismiss and holding defendant's representations to customers that plaintiff was infringing patent rights and that litigation was filed against plaintiff was commercial advertising or promotion intended to influence customers); *Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718 (M.D.N.C. 2012) (denying motion to dismiss and holding the Plaintiff stated a false advertising claim under the Lanham Act because the alleged false statements that Plaintiff's products infringed a patent could deceive and influence customers as to their purchasing decisions).

Here, Plaintiff has adequately alleged that Defendants' statements (namely, that the

products in the Accused Listings were counterfeit) were made for the purpose of removing Plaintiff's Accused Listings from the eBay online marketplace thereby materially effecting the ability of customers and potential customers to purchase Plaintiff's products as well as irreparably tarnishing Plaintiff's reputation with users of the eBay marketplace.  These actions undoubtedly influenced the purchasing decisions of actual and potential consumers of Plaintiff's products.

### 4.     Defendants' statements were sufficiently disseminated.

Plaintiff alleged that Defendants' false and misleading representations were sufficiently disseminated to the relevant purchasing public to constitute commercial advertising. Am. Compl. at ¶ 66.  "The requisite level of circulation and the relevant purchasing public will vary according to the industry." *VG Innovations*, 2011 WL 1466181 at *6.  The Eleventh Circuit has held that "where the customer market is particularly small[,] courts may find a statement to be sufficiently disseminated to constitute 'commercial advertising or promotion,' even though only distributed to a few customers (or even one)." *Suntree Techs*, 693 F.3d at 1349 (citing *Schütz Container Sys., Inc. v. Mauser Corp.*, 2012 WL 1073153, at *31 (N.D. Ga. Mar. 28, 2012) ("[C]ourts have recognized that 'the level of circulation required to constitute advertising and promotion will undeniably vary from industry to industry and from case to case'…[t]hus 'where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual buyer may be enough to trigger the protections of the Act'")); *see also Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) ("Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act."); *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1020–21 (S.D.N.Y. 1994) (finding single letter was sufficient dissemination to constitute advertising or promotion where "the relevant purchasing market is quite small—tainting the goodwill of plaintiff with one purchaser could easily affect another purchaser's view.").

Defendants' Motion attempts to downplay the severity of its communication to eBay by suggesting that the takedown notice was a "private" communication that "never reached consumers." Def.'s Mot. at pp. 9-10.  However, the direct effect of an improperly submitted takedown notice ***in this industry*** is significant.  As alleged by the Amended Complaint, Defendants' takedown notice caused Plaintiff's Accused Listings to be removed from the eBay marketplace and further caused "eBay to place Plaintiff's product listings at the back of the

search query list for Plaintiff's products, thereby making Plaintiff's products more difficult to find and resulting in damage to its reputation as a popular and trusted seller of beauty and skin care products." Am. Compl. at ¶ 44. The Amended Complaint further provides that Defendants' false and misleading statements "actually deceived eBay and are likely to deceive and confuse the public (*i.e.*, eBay's marketplace users) into believing that Plaintiff's products are counterfeit, thereby materially effecting their decision and ability to purchase Plaintiff's products." *Id*. at ¶ 87. The foregoing allegations show dissemination of a false statement directly to eBay which, in turn, manifested into a dissemination of false information relating to Plaintiff's ranking and product visibility to every actual and potential customer visiting Plaintiff's online product pages.

The repercussions of the takedown notice are therefore vast and devastating to Plaintiff. While the notice may not fit the mold of a traditional advertising campaign, its *immediate effect*—as alleged by the Amended Complaint—is to deceive all current and prospective consumers into believing that the Plaintiff is an untrustworthy seller on the eBay marketplace. In *Vitamins Online*, for example, the defendant increased its product's consumer visibility and ranking on Amazon by having its employees submit positive reviews of the products. *Vitamins Online, Inc. v. HeartWise, Inc.*, 207 F. Supp. 3d 1233, 1236 (D. Utah 2016), *order vacated in part on other grounds*, Case No. 2:13-cv-982, 2017 WL 2733867 (D. Utah 2017). The plaintiff asserted a cause of action for unfair competition under the Lanham Act based on the defendant's manipulation of the Amazon ranking system. *Id*. Rejecting defendant's argument that it did not *make* a statement in commerce, the district court held that the "mechanisms" used by defendant to manipulate online marketplace rankings "could qualify as the use of a device in commerce as described by Section 43(a)(1) of the Lanham Act." *Id.* at 1240-41 ("the statute unambiguously allows for a false advertising claim to be based on the 'any word, term, name, symbol, or device'"). Similarly, in the matter at hand, Defendants use of the takedown notice to negatively impact Plaintiff's rankings on the eBay online marketplace qualifies "as the use of a device in commerce as described by Section 43(a)(1) of the Lanham Act."

More importantly, in *Vitamins Online* the district court addressed *the effect* that the plaintiff's manipulation of product rankings had on actual and prospective consumers as follows:

> NatureWise also argues that, even if its conduct is sufficient to fall within the terms of the Lanham Act, Vitamins Online has not shown that the statements at issue were viewed by a sufficient number of the relevant purchasing public….

> Despite language in some cases suggesting a plaintiff is required to show that the information reached or was viewed by a certain number of prospective customers, the court concludes that the test only requires a showing that the information was sufficiently *disseminated* to the relevant purchasing public….
>
> In this case, the information at issue, the customer reviews and the statistics about the helpfulness votes on the customer reviews, was available for viewing on the Amazon product pages for NatureWise's products. Because NatureWise only sells the products at issue in this case through the Amazon product pages, the customer reviews and associated statistics were available for viewing at the exclusive point of sale for the products that they were associated with. ***Therefore, although it is unclear how many of NatureWise's actual or potential customers viewed the reviews and associated statistics, that information was disseminated to all of NatureWise's actual or potential customers that visited the product pages.*** Therefore, the court concludes that the information at issue in this case constitutes commercial advertising or promotion of NatureWise's products for purposes of Vitamins Online's Lanham Act claims.

*Id.* at 1242 (emphasis added). Here, like in *Vitamins Online*, the direct effect of the takedown notice was to lower the visibility and ranking of Plaintiff and its product listings, and disseminate this information to any actual or potential customer that visited Plaintiff's product pages. In accordance with the foregoing authority, Defendants actions in this regard constitute "commercial advertising or promotion" for purposes of Plaintiff's Lanham Act claim.

       **D.**    **The *Noerr-Pennington* Doctrine is Inapplicable.**

The well-pled allegations of the Amended Complaint provide that "Defendants had ***no support whatsoever*** for the takedown notice that Defendants submitted to eBay in connection with the Accused Listings," and further that "Defendants ***acted with the intent*** that the Accused Listings be removed from the eBay marketplace prohibiting consumers from purchasing Plaintiff's products in an effort to gain more market shares by forcing consumers to purchase the Rene Furterer branded products directly from Defendants." Am. Compl. at ¶ 70 (emphasis added). Indeed, Plaintiff's entire Amended Complaint is premised on the fact that Defendants 1) had no basis whatsoever to submit takedown notices for the Accused Listings;[4] and 2) the

---

[4] Defendants' Motion attempts to justify its unlawful conduct by referencing to an alleged purchase on eBay of expired hair care product purportedly sold by Plaintiff. Def.'s Mot. at p. 2, n. 2. Plaintiff reviewed the information provided by Defendants relating to this alleged sale of expired product and has determined the alleged purchase occurred well *after* Defendants instructed eBay to takedown the Accused Listings. To date, Defendants have failed to provide

11

takedown notices were done with the specific intent to gain an unfair economic advantage over Plaintiff. Unlike the plaintiff in *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, Case No. C14-08950-RSM, 2014 WL 6452173 (W.D. Wash. Nov. 17, 2014), in the matter at hand nearly every allegation set forth in the Amended Complaint supports the position that Defendants' takedown notices to eBay were "objectively baseless" and were submitted with the intent to injure Plaintiff.

Further, Defendant Yellow Brand cannot shield itself behind the *Noerr-Pennington* doctrine through the contention that it made no representations relating to a trademark owned by Yellow Brand. Def.'s Mot. at p. 12. The Amended Complaint sets forth misrepresentations that were made relating to Plaintiff's products under the Accused Listings. The Amended Complaint does not purport to base its allegations on ownership or control of any trademarks. Accordingly, Yellow Brand's dogged reference to a lack of ownership of any trademarks at issue in this case is completely irrelevant to the issues before this Court.

### E. Plaintiff Has Properly Alleged a Cause of Action for Tortious Interference.

The Amended Complaint sufficiently states a claim for tortious interference with business relationships by alleging, in part, that "Plaintiff maintained business relationships with eBay and customers that purchased products through the eBay marketplace," and Defendants "intentionally and unjustifiably interfered with these business relationships by sending false and unsupported takedown notices to eBay containing false allegations of infringement relating to Plaintiff's Accused Listings." Am. Compl. at ¶¶ 91 & 93.

Contrary to Defendants' contention, Plaintiff is not required to identify every customer that it has done business with on the eBay marketplace. Such a position was recently rejected by the Eleventh Circuit in *Quality Auto Painting Center of Roselle, Inc. v. State Farm Indemnity Co.*, 917 F.3d 1249 (11th Cir. 2019). Vacating the district court's dismissal of the plaintiff's tortious interference claim, the Eleventh Circuit held as follows:

> Thus, of the potential deficits identified by the district court—i.e., general allegations about "unidentified Defendants," "unidentified customers," and "unnamed plaintiff[s]"—the only possible defect remaining is the failure to identify specific insureds/potential customers who were thus steered. We cannot conclude that the Body Shops' failure to identify particular potential customers who were steered away constitutes a failure to give each defendant fair notice of

---

Plaintiff with any information demonstrating that any due diligence relating to the genuine character of the Accused Listings was done ***prior to*** the submission of the takedown notices.

>the claim against it. It is not the potential customer who is the target of the alleged tortious interference; it is the targeted Body Shop. A potential customer may—but very well may not—tell the Body Shop that he or she was steered away. On the other hand, each Insurance Company, or its claims adjusters, will know whether the company engages in such a practice, and will know whether each named Plaintiff in the five complaints was noncompliant with that company's preferred practices and, most important, whether its insureds were steered away from that Plaintiff Body Shop.

*Id.* at 1275-76; *see also Diamond Resorts Int'l, Inc. v. US Consumer Attorneys, P.A.*, Case No. 18-cv-80311, 2019 WL 3412169, at *10 (S.D. Fla. May 14, 2019) (citing *Quality Auto* and rejecting argument that plaintiff was required "to plead the identities of the customers and specific contractual provisions giving rise to tortious interference claim"). Here, like in *Quality Auto*, the target of Defendants' misrepresentations was the eBay marketplace, and the effect of that targeted activity was to steer customers away from Plaintiff's Accused Listings.

Defendants' contention that its efforts to enforce its purported intellectual property rights somehow bar Plaintiff's tortious interference claim is likewise unavailing. Def.'s Mot. at p. 14. Pursuant to Defendants' own authority, any such efforts must be made in "good faith." *Id.* (citing *Miracle 7, Inc. v. Halo Couture, LLC*, Case No. 13-cv-61643, 2014 WL 11696708 (S.D. Fla. Jan. 17, 2014)). As set forth above, the Amended Complaint sufficiently alleges that Defendants lacked any basis whatsoever to submit the takedown notices at issue, that such actions were taken with the intent to unfairly compete with Plaintiff, and that Defendants acted in bad faith. Am. Compl. at ¶¶ 31, 37, 45, 70 & 93.

Unlike the matter at hand, none of the cases cited in support of Defendant's Motion involve pleadings and allegations that expressly delineate such bad faith conduct. *See Miracle 7, Inc.*, 2014 WL at *4 ("nothing suggests that an ulterior motive of direct, tortious interference exists behind Miracle 7's ostensibly good-faith efforts to protect its mark"); *Dudnikov v. MGA Entertainment, Inc.*, 410 F. Supp. 2d 1010, 1018 ("MGA was entitled to rely on its good faith belief that infringement was taking place and which formed the basis for its notification to eBay"); *3M Co. v. Mohan*, No. 09-cv-1413, 2010 WL 300052, at *7 (D. Minn. Aug. 9, 2010) ("Mohan alleges that '[3M]'s actions are deceptive and unfair trade practices,' [citation omitted], but he fails to identify the specific conduct that constitutes the basis of his claim").

13

### F. This Court Has Personal Jurisdiction over Yellow Brand.

#### 1. Legal Standard

This Court must undertake a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute. Second, the court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). The burden, however, does not shift back to the plaintiff when "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Where a plaintiff's complaint, supporting affidavits, and documents conflict with a defendant's evidence, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.*

In reviewing a motion to dismiss for lack of personal jurisdiction, a court should not dismiss the plaintiff's claims "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish personal jurisdiction over the defendants." *Moltz v. Seneca Balance, Inc.*, 606 F. Supp. 612, 614 (S.D. Fla. 1985) (citing *McKinnis v. Mosely*, 693 F.2d 1054, 1058 (11th Cir. 1982)).

#### 2. This Court has general and specific jurisdiction under the Florida Long Arm Statute.

The Florida long-arm statute allows for two distinct categories of personal jurisdiction: specific jurisdiction and general jurisdiction. Fla. Stat. § 48.193(1) & (2). A court may exercise general jurisdiction over a nonresident defendant when the suit does not arise out of the nonresident's activities in the forum state. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A court may exercise specific jurisdiction over a nonresident defendant when the defendant's contacts with the forum state arise from or are directly related to the cause of action. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008).

### a. Specific Personal Jurisdiction

Specific jurisdiction exists where the non-resident defendant engages in specific enumerated actions which give rise to the stated cause of action. This list of actions includes, in relevant part, "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury … [t]he defendant was engaged in solicitation or service activities within this state…." Fla. Stat. § 48.193(1)(a)(6); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) (adopting broad interpretation of long-arm statute by Florida courts that permits personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida).

Here, pursuant to the allegations of the Amended Complaint, Yellow Brand directly caused injury to Plaintiff's business and reputation within this state when Yellow Brand misrepresented facts relating to the products associated with the Accused Listings. *See* Declaration of Robert Roque at ¶¶ 3 & 4 (attached hereto as **Exhibit 1**); *see also Tarasewicz v. Royal Caribbean Cruises Ltd.*, 2015 WL 3970546, at *20 (S.D. Fla. June 30, 2015) ("Florida's specific jurisdiction requires the plaintiff to establish connexity between the injuries suffered and the defendant's contacts."). In support of its Motion to Dismiss the Defendants have submitted the Declaration of Klas Karlsson (ECF No. 36-1) ("Karlsson Declaration"). The Karl Declaration, however, does not contest that Yellow Brand, acting as an agent for Pierre Fabre, notified third party eBay that the products associated with Plaintiff's Accused Listings were counterfeit and/or infringing products. Rather, the Karlsson Declaration unequivocally establishes that Yellow Brand, as a "provider of online anti-counterfeiting services," has "three active clients located in Florida." ("Karlsson Decl.") at ¶¶ 3 & 12. Thus, in accordance with the uncontested allegations of the Amended Complaint as well as Defendant's own admissions, Yellow Brand's actions caused injury to a person in this state at or about a time when Yellow Brand was engaged in service activities in this state.

The Florida Long–Arm statute also provides for the assertion of specific jurisdiction over an out-of-state defendant who commits a tortious act in Florida. Fla. Stat. § 48.193(1)(a)(2). Florida courts construing this provision have noted that the alleged tortfeasor's "physical presence [in Florida] is not required." *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002). Rather, jurisdiction may be found in certain instances where an out-of-state defendant commits a

15

tort that produces an injury in Florida. *See id.* For example, allegations about an out-of-state defendant's "telephonic, electronic, or written communications into Florida" are sufficient to trigger jurisdiction under the Long–Arm statute provided, however, that the cause of action arises from those communications. *Id.* In the matter at hand, Yellow Brand submitted its unsupported request to have Plaintiff's Accused Listing taken down with the knowledge that such instructions would be communicated to Plaintiff, a Florida-based seller. Pursuant to the foregoing authority, such a communication is sufficient to trigger jurisdiction under the Florida Long-Arm statute because Plaintiff's causes of action against Yellow Brand arise from its communications with eBay.

b. **General Personal Jurisdiction**

Yellow Brand is also subject to general personal jurisdiction because Yellow Brand has engaged in substantial business activities within the State of Florida. In order to establish substantial and not isolated activity in Florida, the activities of the Defendant must be "considered collectively and show a general course of business activity in the State for pecuniary benefit." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So.2d 561, 564 (Fla. 1975)); *April Indus., Inc. v. Levy*, 411 So.2d 303, 305 (Fla. Dist. Ct. App. 1982) (holding that § 48.193(2) requires "a general course of business activity in the state for pecuniary benefit").

General personal jurisdiction is established in this case as Yellow Brand has admittedly engaged in a general course of business activity in the State of Florida for pecuniary benefit. Yellow Brand attempts to downplay its activities in the state by citing to cases where 7% of total sales in the state were insufficient to support the exercise of general jurisdiction. Def.'s Mot. at p. 17 (citing *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226 (M.D. Fla. 2019)). The Karlsson Declaration, however, does not state that Yellow Brand's active Florida clients account for 7% or less of its total sales or revenue. Rather the Karlsonn Declaration admits that close to 5% of all of its U.S. clients are in Florida. The percentage of total sales from these Florida clients, as well as the depth of Yellow Brand's interactions with these clients, may support the exercise of general jurisdiction. At a minimum, Plaintiff should be provided the opportunity to seek jurisdictional discovery on this issue. *See Court-Appointed Receiver for Lancer Management Grp. LLC v. Cable Road Investments Ltd.*, Case No. 05-cv-60145, 2007 WL 9698235, at *2 (S.D. Fla. Jan. 12, 2007) ("Federal courts have generally authorized

16

jurisdictional discovery antecedent to resolving Rule 12(b)(2) motions to dismiss for want of personal jurisdiction.").

### c. Due Process Clause of the Fourteenth Amendment

The Court must next consider whether the exercise of personal jurisdiction over Yellow Brand in this case would offend the Due Process Clause of the Fourteenth Amendment. "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fairly play and substantial justice.'" *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). With respect to the due process inquiry, the Eleventh Circuit Court of Appeals has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. *Louis Vuitton*, 736 F.3d at 1355. Under this test, the Court must examine:

> (1) Whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### 1. Plaintiff's claims "arise out of or relate to" Defendant's contacts with the forum.

As set forth above, Yellow Brand has admittedly stated that it provides online anti-counterfeiting services to several entities in the State of Florida. Plaintiff's claims against Yellow Brand are entirely related to these services. Specifically, Plaintiff has alleged that Yellow Brand, acting as Pierre Fabre's agent, has misrepresented to a third-party online marketplace that the products associated with Plaintiff's Accused Listings are counterfeit. Yellow Brand has not submitted any evidence to refute these allegations. Accordingly, the first prong of the due process analysis is satisfied.

### 2. Defendant has "purposeful availed" itself to the jurisdiction.

"In intentional tort cases, there are two applicable tests for determining whether purposeful availment occurred." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356. Purposeful availment can be established either by applying the "effects test," which the Supreme Court articulated in *Calder v. Jones*, 465 U.S. 783 (1984), or under a traditional minimum contacts test, as set forth in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790. Here, under either test, purposeful availment is met.

Under the "effects test," a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state. *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356 (citing *Licciardello,* 544 F.3d at 1285). "This occurs when the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356 (quoting *Licciardello*, 544 F.3d at 1285-86, 1287-88).

Here, the effects test is similarly met: 1) Yellow Brand intentionally misrepresented facts relating to the products associated with the Accused Listings; 2) Yellow Brand's misrepresentations related to an online seller having a principal place of business in Florida; and 3) Yellow Brand should have reasonably anticipated that the harm caused by a misrepresentation as to the genuine character of a Florida-based seller's products would be suffered by that entity in Florida.

Yellow Brand also satisfies the minimum contacts analysis. Under the minimum contacts test, the Court must assess whether the Defendant's contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed itself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton*, 736 F.3d at 1357. Here, all three factors are present: (1) Yellow Brand has admitted that it provides online anti-counterfeiting services to residents of the state; (2) Yellow Brand has admittedly availed itself of doing business within the state by offering its services to at least three clients in Florida; and (3) Yellow Brand, having over 80 clients throughout the United States—including three in Florida— should have reasonably anticipated being haled into this Court when it made misrepresentations of fact about a Florida-based seller's products.

### 3. Fair Play and Substantial Justice

Under the fair play and substantial justice analysis, the courts consider these factors: (1) "the burden on the defendant;" (2) "the forum's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" and (4) "the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288.

Any purported burden on Yellow Brand should not be countenanced in view of its admission that it provides services to clients throughout the country, including clients in Florida. Second, Florida has a vested interest in adjudicating this matter. Plaintiff is a Florida limited liability corporation with its principal place of business in Florida, and Yellow Brand intentionally made misrepresentations relating to Plaintiff's sale of products on an online marketplace in an effort to place its principal at unfair competitive advantage. Third, because Plaintiff's principal place of business is in Florida, Florida provides the most convenient and effective forum for this dispute. Finally, the Florida system has an interest in resolving this dispute because it relates to false advertising, unfair competition, deceptive trade practices, tortious interference, and defamation specifically targeted at a Florida-based company.

### III. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court DENY Defendants' Motion, and award any other relief deemed just and proper.

Date: December 2, 2019

Respectfully submitted by,
THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue
South Tower, Suite 800
Miami FL, 33131
Tel: 305-728-8831
Fax: 305-428-2450

By: s/ *Richard Guerra*
Richard Guerra
Fla. Bar No. 689521
Email: rguerra@brickellip.com
Rafael Perez-Pineiro
Fla. Bar No. 543101
Email: rperez@brickellip.com
Nicole Fundora
Fla. Bar No. 1010231
Email: nfundora@brickellip.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF notice on December 2, 2019 on all counsel or parties of record on the Service List below.

s/ *Richard Guerra*  
Richard Guerra

## SERVICE LIST

LOTT & FISCHER PL  
Leslie J. Lott  
Email: ljlott@lottfischer.com  
Ury Fischer  
Email: ufischer@lottfischer.com  
255 Aragon Ave  
Third Floor  
Coral Gables, FL 33134  
Telephone: (305) 448-7089  
*Counsel for Defendants*

KILPATRICK TOWNSEND & STOCKTON LLP  
Theodore H. Davis, Jr.  
Email: tdavis@kilpatricktownsend.com  
1100 Peachtree Street NE  
Suite 2800  
Atlanta, GA 30309  
Telephone: (404) 815-6534

KILPATRICK TOWNSEND & STOCKTON LLP  
Bryan J. Wolin  
Email: bwolin@kilpatricktownsend.com  
The Grace Building  
1114 Avenue of the Americas  
New York, NY 10036  
Telephone: (212) 775-8735  
*Counsel for Defendant Yellow Brand Protection, Inc.*

FOLEY HOAG LLP  
Madeleine K. Rodriguez  
Email: mrodriguez@foleyhoag.com  
Nicole Kinsley  
Email: nkinsley@foleyhoag.com  
155 Seaport Boulevard  
Boston, MA 02210  
Telephone: (617) 832-1185

FOLEY HOAG LLP  
Natasha Reed  
Email: nreed@foleyhoag.com  
Daniel Schimmel  
Email: dschimmel@foleyhoag.com  
1301 Avenue of the Americas  
New York, NY 10019  
Telephone: (646) 927-5500  
*Counsel for Defendants Pierre Fabre Dermo-Cosmetique USA, Inc. and Pierre Fabre Dermo-Cosmetique, S.A.*