United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Verbena Products LLC, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-23616-Civ-Scola |
| | ) |
| Pierre Fabre Dermo-Cosmetique USA, Inc. and others, Defendants. | ) |

### Order on Motion to Dismiss

Now before the Court is the Defendants' motion to dismiss. The Defendants Pierre Fabre Dermo-Cosmetique USA, Inc., Pierre Fabre Dermo-Cosmetique, S.A. (collectively "PFDC"), and Yellow Brand Protection, Inc. ("Yellow Brand") move to dismiss the amended complaint, arguing that the Court lacks personal jurisdiction over Yellow Brand and that the Plaintiff failed to state a claim upon which relief can be granted. For the reasons set forth below, the Court **grants in part and denies in part** the Defendants' motion to dismiss (**ECF No. 36**).

1. **Background**

The Plaintiff Verbena Products LLC d/b/a Beautyvice ("Beautyvice") is an online retailer of cosmetic and beauty care products that are sold on the website eBay.com. (ECF No. 26 at ¶ 9.) The Defendant Yellow Brand is a leading global provider of online anti-counterfeiting services. (ECF No. 36 at 7.) PFDC manufactures and sells high quality pharmaceutical and dermocosmetics products around the world, including hair care products under the trademarks RENE FURTERER and PIERRE FABRE. (*Id.* at 7-8.)

PFDC sent a notice to eBay accusing Beautyvice of selling counterfeit products, and, as a result, eBay removed Beautyvice's accused listings. (ECF No. 26 at ¶¶ 26-28.) The products accused of infringing on PFDC's trademark were Rene Furterer products that Beautyvice lawfully purchased and re-sold. (*Id.* at ¶ 32.) After receiving the notice, Beautyvice submitted a counter notice for the accused listings. (*Id.* at ¶ 35.) EBay informed Beautyvice that the listings were removed "based on [PFDC's] trademark rights," and it urged Beautyvice to resolve this matter directly with the rights owner. (*Id.* at ¶ 36.)

Beautyvice then emailed PFDC explaining that its sales were lawful and that PFDC's takedown notice was sent in error. In response, PFDC received a form email from Yellow Brand that was sent on behalf of PFDC that contained "no substantive information." (*Id.* at ¶ 38.) Beautyvice sent a second email to

PFDC and Yellow Brand again explaining that its products were not infringing on PFDC's mark. (*Id.* at ¶ 40.) Beautyvice never received a response. (*Id.* at ¶ 41.) As a result, Beautyvice filed this suit. On October 21, 2019, when Beautyvice filed its complaint, eBay had still not reposted the accused listings. (*Id.* at ¶ 42.)

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Personal Jurisdiction over Yellow Brand

In the Eleventh Circuit, courts consider "two questions in resolving personal jurisdiction: (1) whether personal jurisdiction exists over the nonresident defendant[s] under Florida's long-arm statute, and (2) if so, whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Here, Yellow Brand does not argue that the Court's exercise of jurisdiction violates the Due Process Clause, and thus the Court will only address the purported lack of jurisdiction under Florida's long-arm statute.

The Court may retain jurisdiction over a Defendant if the Court has specific or general jurisdiction over the Defendant. Fla. Stat. § 48.193(1)-(2). A court may exercise general jurisdiction when a defendant "is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." *Louis Vuitton Malletier*, 736 F.3d 1339 at 1352. A court may exercise specific jurisdiction over a nonresident defendant when the defendant's contacts with the forum state arise from or are directly related to the cause of action. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008).

Section 48.193(1)(a)(2), Florida Statutes, allows a Court to exercise jurisdiction over parties who commit "a tortious act within this state." Beautyvice

argues that the Defendant's issuance of a takedown notice to eBay, which caused Beautyvice's items to be removed from eBay, constitutes a tortious act within Florida. The Court agrees.

Under Florida law, "a nonresident defendant commits a tortious act within Florida when he commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton Malletier*, 736 F.3d at 1353 (citing *Lovelady*, 544 F.3d at 1283) (emphasis in original). For the purpose of this analysis, trademark infringement is considered a tort. *Louis Vuitton Malletier*, 736 F.3d at 1354. Furthermore, under § 48.193(1)(a)(2), "a trademark infringement on an Internet website causes injury and occurs in Florida by virtue of the website's accessibility in Florida." *Id.* at 1345. The complaint alleges that Yellow Brand improperly issued a takedown notice to eBay, which caused Beautyvice's product to be removed from a website that is accessible to millions of Florida shoppers. Beautyvice's injury stemming from an accusation that it infringed on PFDC's trademark constitutes a tortious act within Florida, and thus this Court may exercise specific jurisdiction over this dispute.

### 4. Declaratory Action Against Yellow Brand

A federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This is known as a declaratory judgment. A declaratory judgment is not an advisory opinion. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). Rather, a declaratory judgment resolves an actual case or controversy, as contemplated in Article III of the United States Constitution. *Id.* The test to determine if a case legitimately satisfies the case-or-controversy requirement is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Walinbay S.A. v. Fresh Results, LLC*, 2014 WL 1259780 at *1 (S.D. Fla. Feb. 19, 2014) (Scola, J.) (citing *MedImmune, Inc.*, 549 U.S. at 126). A party who anticipates litigation looming may preemptively file a declaratory-judgment action. *Cf. Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137 (11th Cir. 2005) (explaining that a district court is not "required to dismiss a declaratory judgment action when the action was filed in apparent anticipation of another proceeding").

Beautyvice seeks a declaratory judgment that it is not infringing on the Defendants' purported trademark rights. (ECF No. 26 at ¶ 58.) This count is directed at all of the Defendants including Yellow Brand even though the Complaint does not allege that Yellow Brand uses trademarks similar to Beautyvice's marks, nor does it allege that Yellow Brand has taken concrete steps

to do so. Any chance that Yellow Brand would injure Beautyvice is far too hypothetical or conjectural to be the basis of a declaratory action. *See Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("There must be a substantial likelihood that the plaintiff will suffer future injury: a perhaps or maybe chance is not enough"). Therefore, Beautyvice has failed to allege a substantial controversy between Beautyvice and Yellow Brand.

### 5. False Advertising under the Lanham Act

A Lanham Act false advertising claim under section 1125(a) arises when "any person who, on or in connection with any goods . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods." *Suntree Techs, Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1348 (11th Cir. 2012). To establish a prima facie case of false advertising pursuant to 1125(a), the plaintiff must establish that the alleged infringing conduct constitutes "commercial advertising or promotion." *Id.* at 1339. To make this determination, the representations must be:

> (1) commercial speech; (b) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

*Id.* The Defendants argue that the fourth element has not been sufficiently alleged. In other words, the complaint does not contain allegations that the Defendants' statements have been disseminated to the relevant purchasing public; instead the complaint only describes one private communication to eBay that was not disseminated to any consumers. (ECF No. 36 at 15.)

The single, private communication with eBay does not constitute sufficient dissemination. In order to be considered "commercial advertisement or promotion," the information must have been disseminated to potential customers. *Suntree Technologies, Inc.*, 693 F.3d at 1349 (affirming summary judgment because "Suntree also failed to present any evidence that the brochure was actually disseminated to any potential customers"); *Advisors Excel, LLC v. Scranton*, 2014 WL 12543802, *6-7 (S.D. Fla. Sep. 15, 2014) (Middlebrooks, J.) (granting the motion to dismiss because "while Plaintiff does allege dissemination through the internet, Plaintiff fails to allege how long the video was posted,

whether the video was posted on a public or private website, any estimate of how many people saw the video, or any other facts that could assist in measuring the breadth of the alleged dissemination"); *see also*, *Star-Brite Distributing, Inc. v. Kop-Coat, Inc.*, 2010 WL 750353, *3 (S.D. Fla. 2010) (Cohn, J.) (press release is commercial speech constituting sufficient dissemination to the consumers). Although the Eleventh Circuit has stated that "where the customer market is particularly small, courts may find a statement to be sufficiently disseminated . . . even though only distributed to a few customers (or even one)," the Plaintiff has not alleged that the takedown notice was disseminated to even a single customer. *Suntree Technologies, Inc.*, 693 F.3d at 1349.

Nevertheless, Beautyvice argues that the effect of the takedown notice was "to lower the visibility and ranking of Plaintiff and its product listings and disseminate this information to any actual or potential customer that visited Plaintiff's product pages." (ECF No. 39 at 11.) In other words, lowering the visibility of the products was "dissemination" of the misrepresentations in the takedown notice. Beautyvice mistakenly relies on *Vitamins Online, Inc. v. HeartWise, Inc.*, 207 F. Supp. 3d 1233 (D. Utah 2016) for the proposition that the effect of the misrepresentation on an online platform is sufficient to constitute dissemination. In *Vitamins Online*, the court found that offering free products in exchange for posting positive reviews online are violations of the Lanham Act. *Id.* at 1240. The Southern District of Utah held that the Plaintiff did not need to make the statements in order to be liable under the Lanham Act—instead the Plaintiff could be liable for causing others to make the statements. *Id.* Nevertheless, the false statements were required to be "sufficiently disseminated to the relevant purchasing public." *Id.* at 1242. The court held that the false reviews were sufficiently disseminated "to all of [the Plaintiff's] actual or potential customers that visited the product pages," and thus "the information at issue in this case constitutes commercial advertising or promotion." *Id.* In contrast, the takedown notice in this case was not disseminated to any customers who visited eBay.com to buy Beautyvice's products. This is insufficient dissemination to render the speech "commercial advertising or promotion." Because Beautyvice has not alleged that the takedown notice was disseminated to any customers, it has failed to state a claim for false advertising under the Lanham Act.

Counts three and four for unfair competition under Florida common law and for a violation of Florida's Deceptive and Unfair Trade Practices Act are cumulative of the false advertising and should be dismissed for the same reason. *See Suntree Techs, Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012). The Eleventh Circuit has held that "[t]he legal standards we apply to the FDUPTA claim are the same as those we have applied under section 43(a) of the

Lanham Act." *Suntree Technologies, Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012). "Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law. *Id.* (quoting *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007)). "Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Id.* (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n. 4 (11th Cir. 2001)).

### 6. The *Noerr Pennington* Doctrine

The *Noerr Pennington* doctrine derives from the First Amendment's guarantee of "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. The doctrine applies to persons who petition all types of government entities, including legislatures, administrative agencies, and courts. *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002). Although the *Noerr* doctrine initially arose in the antitrust context, *see E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-38 (1961), courts have extended the *Noerr* doctrine to protect First Amendment "petitioning of the government from claims brought under federal and state laws including . . . common-law tortious interference with contractual relations." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075 1084 (5th Cir. 1988); *see also Atico Intern. USA, Inc. v. LUV N' Care, Ltd.*, 2009 WL 2589148, at *2 n. 2 (S.D. Fla. Aug. 19, 2009) (Cohn, J.) (collecting cases). "Courts have not, however, extended the doctrine to shield defendants from liability for defamation." *Dietrich-Barnes v. Alexander*, 2007 WL 9701637, *3 (N.D. Ga. Feb. 2, 2007); *see also Kinsman v. Winston*, 2015 WL 12839267, at *7 n. 10 (M.D. Fla. Sep. 15, 2015) ("Much more thorough briefing, presumably at the summary judgment stage, will be necessary to convince the Court that *Noerr-Pennington* has even theoretical application to this kind of [defamation] case.") .[1]

The doctrine extends not only to petitioning of the judicial branch, but also to acts reasonably attendant to litigation, such as demand letters. *Atico Intern. USA, Inc.*, 2009 WL 2589148, at *2 (citing *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992) (holding that threatening litigation is a protected, prelitigation activity)). But this immunity is not absolute: if a lawsuit is a "sham," then it is not protected by the First Amendment. *Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, 2014 WL 988767, *22 (S.D. Fla. March 13, 2014) (Scola, J.). The party challenging immunity bears the

---

[1] The Defendants did not provide any applicable law to support their argument that the *Noerr-Pennington* doctrine applies to defamation claims.

burden to show that the lawsuit is a sham. *Atico International USA, Inc. v. Luv N' Care, Ltd.*, 2009 WL 2589148, at *3 (S.D. Fla. August 19, 2009) (Cohn, J.) (internal quotation marks omitted).

The Supreme Court developed a two-part test to determine if a lawsuit is a sham. The first part is objective: "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993). The second part, subjective: did the party bring the suit based on the party's belief that the process of the suit itself would further an illegal objective (for example, its belief that the costs of litigation would harm a competitor) rather than its belief that the potential outcome of the suit (i.e., judicial relief) made suing worthwhile. *See id.* at 56-57, 60-61; *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).

Demonstrating that a lawsuit is objectively baseless is difficult. "The fact that a litigant loses his case does not show that his lawsuit was objectively baseless for purposes of *Noerr-Pennington* immunity." *White*, 227 F.3d at 1232 (italics added). A "court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation. The court must remember that even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Professional Real Estate*, 508 U.S. at 60 n.5 (brackets, internal citations, and internal quotation marks omitted). *Professional Real Estate* itself concluded that a copyright suit defeated on summary judgment was not a sham. *Id.* at 64-65. In concluding that a losing copyright suit was not a sham, the Court drew from Rule 11 of the Federal Rules of Civil Procedure: "at the very least," the losing copyright suit "was based on an 'objectively good faith argument for the extension, modification, or reversal of existing law . . . . Even in the absence of supporting authority, [the losing party] would have been entitled to press a novel copyright claim so long as a similarly situated reasonable litigant could have perceived some likelihood of success.'" *Id.* at 65 (quoting Fed. R. Civ. P. 11). As the Ninth Circuit cautioned, "We do not lightly conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections of the First Amendment, a result we would reach only with great reluctance." *White*, 227 F.3d at 1232.

Beautyvice filed suit for a declaratory judgment that its products do not infringe on PFDC, contending that it "lawfully purchased and re-sold" the products at issue. (ECF No 26 at ¶ 26.) However, it has not alleged that PFDC's position is "objectively baseless." Because Beautyvice cannot make the difficult showing that the Defendants' demand letter was objectively baseless, the lawsuit

is not a sham and PFDC is immune from liability for Beautyvice's tortious interference claim. Beautyvice's allegation—that the Defendants "acted with the intent that the Accused Listings be removed from the eBay marketplace prohibiting consumers from purchasing Plaintiff's products in an effort to gain more market shares by forcing consumers to purchase the Rene Furterer branded products directly from Defendants"—goes to PFDC's subjective intent, but it does not establish that the takedown letter was objectively baseless. (ECF No. 39 at 12.) Therefore, the *Noerr-Pennington* doctrine bars count five for tortious interference but does not bar count six for defamation because the *Noerr Pennington* doctrine does not apply to defamation claims.

### 7. Conclusion

In sum, the Court **grants in part and denies in part** the Defendants' motion to dismiss (**ECF No. 36**).

- The Court dismisses count one with respect to Yellow Brand. Count one may proceed against PFDC.
- The Court also dismisses counts two, three, four, and five.
- Count six may proceed against all Defendants.

**Done and ordered** at Miami, Florida, on February 28, 2020.

_____
Robert N. Scola, Jr.
United States District Judge